Leigh A. Kirmssé (SBN 161929)
HOWREY LLP
525 Market St., Suite 3600
San Francisco, CA 94105-2708
Telephone : (415) 848-4993
Facsimile : (415) 848-4999
Email: kirmssel@howrey.com

Roxann E. Henry (DC Bar No. 231282; *pro hac vice to be submitted*)
Peter E. Moll (DC Bar No. 351569; *pro hac vice to be submitted*)
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004
Tel.: (202) 383-6503
Fax: (202) 383-6610
Email: henryr@howrey.com
        mollp@howrey.com

Attorneys for Nestlé USA, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA A. WEAVER, on behalf of himself and a class of persons similarly situated,<br><br>                Plaintiff,<br><br>       vs.<br><br>NESTLÉ USA, INC.<br><br>                Defendant. | Case No.  08-cv-3636 JSW<br><br>**DEFENDANT'S OPPOSITION TO MOTION FOR REMAND**<br><br>**Date:  October 31, 2008**<br>**Time: 9:00 a.m.**<br>**Courtroom: 16th Floor, Room 17**<br>**District Judge Jeffrey S. White** |

HOWREY LLP

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................. 1

II. BACKGROUND ............................................................................................................... 3

    A. A Newspaper Article Leads To More Than 84 Copy-Cat Class Actions That Are Consolidated For Multidistrict Federal Proceedings. ........................................................................................................... 3

    B. One Of The Consolidated Cases, *Candido v. Hershey,* Asserts Claims Under California Law On Behalf Of A Putative Class Of California Consumers. ...................................................................................... 4

    C. With Knowledge Of The Consolidated Proceedings, Plaintiff Files A Complaint Alleging The Same Claims As *Candido* On Behalf Of The Same Putative Class. .................................................................................. 5

III. ARGUMENT .................................................................................................................... 6

    A. Minimal Diversity Jurisdiction Exists Because Plaintiff Is A Citizen Of California And Defendant Is A Citizen Of Delaware. ................................... 6

        1. The Plain Language of Section 1332(d)(A)(2) Establishes That Minimal Diversity Is Present Under These Circumstances. ............................................................................................ 6

        2. Congress Clearly Stated Its Intent That Minimal Diversity May Be Based On A Defendant Corporation's Dual Citizenship. ..................................................................................................... 8

        3. Congress Clearly Stated Its Intent That The Jurisdictional Provisions of CAFA Be Interpreted Broadly To Allow Removal To Federal Court. ............................................................................ 10

        4. As An Expressly Remedial Statute, CAFA Should Be Interpreted Broadly To Serve Its Legislative Purposes To The Maximum Extent Possible. ............................................................................ 12

        5. The Non-CAFA Cases Cited By Plaintiff Are Inapposite. .............................. 13

IV. CONCLUSION ............................................................................................................... 14

# TABLE OF AUTHORITIES

## CASES

*In re Arizona Appetito's Stores, Inc.*,
    893 F.2d 216 (9th Cir. 1990) ...................................................................................... 6, 10

*Blackwell v. The Hershey Co.*,
    Case No. 08-cv-00674 ........................................................................................................ 5

*Brower v. Evans*,
    257 F.3d 1058 (9th Cir. 2001) .................................................................................. 6, 9, 10

*Bush v. Cheaptickets, Inc.*,
    425 F.3d 683 (9th Cir. 2005) ............................................................................................ 7

*In Re Chocolate Confectionary Antitrust Litigation*,
    MDL No. 1935 ................................................................................................................... 4

*Cobain v. Destination Hotels & Resorts*,
    No. Civ-S-05-2248, 2007 U.S. Dist. LEXIS 40077 (E.D. Cal. 2007) .................................. 12

*Cobb v. Contract Transport Inc.*,
    452 F.3d 543 (6th Cir. 2006) ........................................................................................... 12

*Evans v. Walter Industrial*,
    449 F.3d 1159 (11th Cir. 2006) .................................................................................. 2, 10

*Fuller v. Home Depot Services, LLC.*,
    CA. No. 07-cv-1268, 2007 U.S. Dist. LEXIS 59770 (N.D. Ga. Aug. 14, 2007) ............ 1, 7, 13

*Gozlon-Peretz v. United States*
    498 U.S. 395 (1991)……………………………………………………………..10

*Hart v. FederalEx Ground Package System, Inc.*,
    457 F.3d 675 (7th Cir. 2006) ............................................................................................. 2

*Hartford Underwriters Insurance Co. v. Union Planters Bank*,
    530 U.S. 1 (2000) ..................................................................................................... 7, 8, 9

*Lambert v. Ackerly*,
    180 F.3d 997 (9th Cir. 1999) ........................................................................................... 12

*Lamson v. The Hershey Co.*,
    Case No. 3:08-cv-00153 ..................................................................................................... 4

*In re McKesson HBOC, Inc. ERISA Litigation*,
    391 F. Supp. 2d 812 (N.D. Cal. 2005) ...................................................................... 7, 8, 9

*Mills Music, Inc. v. Snyder*,
    469 U.S. 153 (1985) ........................................................................................................... 7

*N. Haven Board of Education v. Bell*,
    456 U.S. 512 (1982) ........................................................................................................... 8

*NLRB v. Lion Oil Co.*,
 352 U.S. 282 (1957) .................................................................................................................10

*Nike, Inc. v. Comercial Iberica De Exclusivas Deportivas, S.A.*,
 20 F.3d 987 ..............................................................................................................................14

*Sellers v. Kohlberg*,
 2001 U.S. Dist. LEXIS 9498 (N.D. Cal. 2001) ........................................................................13

*Serrano v. 180 Connect, Inc.*,
 478 F.3d 1018 (9th Cir. 2007) ....................................................................................................7

*Tosco Corp. v. Communities for a Better Environment*,
 236 F.3d 495 (9th Cir. 2001) ....................................................................................................13

*United States v. 594,464 Pounds of Salmon*,
 871 F.2d 824 (9th Cir. 1989) ....................................................................................................10

*United States v. Mohrbacher*,
 182 F.3d 1041 (9th Cir. 1999) ..................................................................................................10

**STATUTES**

28 United States Code section 1332(d) ........................................................................................6, 7

28 United States Code section 1407 ............................................................................................4, 5

P.L. 109-2, §§ 2(a)(2), 2(a)(4)(A), 2(b)(2), 119 Stat. 4 (2005) .......................................... 1, 10, 11

P.L. 109-2, §§ 4(a), 5(a), 119 Stat. 4 (2005) ...................................................................................2

S. Rep. 109-14, at 4 (2005), reprinted in 2005 U.S.C.C.A.N. 3 ......................................................1

S. Rep. No. 85-1830, at 5 (1958)...................................................................................................13

The Class Action Fairness Act of 2005 ("CAFA"), P.L. 109-2, § 4(a), 119 Stat. 4 (Feb. 18,
 2005) ..........................................................................................................................................1

California Business & Profession Code section 1670 ("Cartwright Act")………………….……6

HOWREY LLP

-iii-
OPPOSITION TO MOTION FOR REMAND
Case No. 08-cv-3636 JSW

## I. INTRODUCTION

The Class Action Fairness Act of 2005 ("CAFA"), P.L. 109-2, § 4(a), 119 Stat. 4 (Feb. 18, 2005), vests federal courts with original jurisdiction over class actions if the aggregate amount in controversy exceeds $5,000,000 and "any class member is a citizen of a State different from any defendant," i.e., "minimal" diversity is present. Plaintiff's motion for remand presents a critical question of statutory interpretation of CAFA that is of first impression in the federal appellate courts: when a plaintiff is a citizen of one state and a defendant corporation is a citizen of both that state and another state, is the minimal diversity requirement met? Defendant contends it is; Plaintiff contends it is not. Defendant's counsel is aware of only one federal court that has addressed the question, and it found Defendant's position to be correct. *See Fuller v. Home Depot Servs., LLC.*, CA. No. 07-cv-1268, 2007 U.S. Dist. LEXIS 59770, *7-8 (N.D. Ga. Aug. 14, 2007). This Court's answer to this question may have nationwide impact and may determine whether Congress's intent in enacting CAFA is fully realized.

Congress's purpose in enacting CAFA cannot be seriously disputed. CAFA's text, specifically its legislative findings and stated purposes, demonstrates that Congress sought to remedy "abuses of the class action device" in state courts by developing a new jurisdictional regime that would "restore the intent of the framers of the United States Constitution by providing for Federal Court consideration of cases of national importance under diversity jurisdiction." P.L. 109-2, §§ 2(a)(2), 2(a)(4)(A), 2(b)(2), 119 Stat. 4 (2005). Congress found plaintiffs were "keeping cases of national importance out of Federal court" through manipulative pleading to defeat diversity jurisdiction. *Id.* § 2(a)(4)(A). Congress found "multiple class action cases purporting to assert the same claims on behalf of the same people often proceed simultaneously in different state courts, causing judicial inefficiencies and promoting collusive activity." S. Rep. 109-14, at *4 (2005), reprinted in 2005 U.S.C.C.A.N. 3. Defendants were unfairly forced to litigate multiple identical state court class actions because there was no mechanism for consolidating the cases in state court. *Id.* at *23. Congress found "[c]lass members often receive little or no benefit from class actions, and are sometimes harmed, such as where counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value." P.L. 109-2, § 2(a)(3)(A). In an effort to halt this "parade of abuses," S. Rep. 109-14, at *6,

Congress broadened federal jurisdiction over class actions by facilitating their removal to federal court.

As courts previously have recognized, "CAFA's language favors federal jurisdiction over class actions" and the "language and structure of CAFA itself indicates that Congress contemplated broad federal jurisdiction." *Evans v. Walter Indus.*, 449 F.3d 1159, 1163-64 (11th Cir. 2006). For example, only minimal diversity is required, wherein "any member of a class of plaintiffs is a citizen of a State different from any defendant"; the claims of the individual class members are aggregated to determine the amount in controversy; there is no time limit on removal (formerly one year from filing of the complaint); any defendant may remove without the consent of co-defendants; "mass actions," not brought as class actions, qualify for removal under class action rules; and discretionary appeals of remand orders are now permitted. *See* P.L. 109-2, §§ 4(a), 5(a), 119 Stat. 4 (2005). CAFA also includes exceptions to this expansion of federal jurisdiction, the "home-state" or "local controversy" exceptions, *see id.* § 4(a), which are "designed to draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to that state." *Hart v. FedEx Ground Package Sys., Inc.,* 457 F.3d 675, 681-82 (7th Cir. 2006).

Plaintiff's complaint is precisely the type of abuse Congress enacted CAFA to remedy: a copy-cat "case of national importance" masquerading as a "local controversy," manipulatively pleaded to avoid removal to federal court. Parroting a Wall Street Journal article that spawned dozens of nearly identical suits, Plaintiff alleges that various manufacturers of chocolate confectionaries located across the United States and abroad conspired to fix chocolate prices. Plaintiff filed the complaint many months after identical complaints had been filed in state and federal courts (including several in California federal courts) and transferred to the Middle District of Pennsylvania for consolidated federal multidistrict ("MDL") proceedings. At least 84 cases have been transferred to the MDL court to date, and Plaintiff's counsel, Stuart M. Paynter, represents plaintiffs in at least one of those cases. Despite his knowledge that identical claims are pending in the MDL court on behalf of the same putative class of California residents, Plaintiff's counsel filed another putative class action in state court duplicating those claims.

Plaintiff's attempt to game CAFA is transparent. It is clear from Plaintiff's allegations that the dispute is one of nationwide importance; Plaintiff alleges that Defendant conspired with six other companies located around the country, raising prices of chocolate confectionaries for all consumers, with no unique impact on California. *See* Complaint ¶¶ 1, 5-11, 31-67. But in a twist explainable only as an attempt to avoid removal and consolidation, Plaintiff's counsel did not name any of those alleged co-conspirators as defendants, and pleaded only a subset of the claims in the MDL state-law claims. *See id.* ¶¶ 1, 5-11, 72-83. Plaintiff thus contends this case concerns only California and belongs in California state court, but Plaintiff's allegations demonstrate that this case is no more linked to California than it is to any of the states or foreign countries where the alleged co-conspirators are citizens or other plaintiffs have sued. The only apparent purpose of Plaintiff's bid to remain in state court is to extort a settlement from a defendant already facing identical claims in the MDL court and to make an end run around the Scheduling Order under issue by Judge Conner in the MDL proceeding. It is solely Plaintiff's counsel, and not California consumers, that stand to benefit if Plaintiff's suit is allowed to proceed in state court.

Consistent with CAFA's plain language, legislative findings, and stated purposes, and the only other district court to address the question, this Court should find that minimal diversity is met. Alternatively, rather than weigh in on this critical jurisdictional issue in isolation from the nationwide proceedings, the Court should allow the MDL court to decide the issue. The MDL court has a holistic view of the dozens of similar suits filed in other state and federal courts, and thus is best positioned to evaluate the merits of having Plaintiff's putative class proceed in state court while identical claims are litigated on behalf of the same putative class in the MDL proceeding.

## II. BACKGROUND

### A. A Newspaper Article Leads To More Than 84 Copy-Cat Class Actions That Are Consolidated For Multidistrict Federal Proceedings.

In December 2007, an article in the Wall Street Journal claimed that the United States Justice Department was looking into possible price-fixing in the chocolate industry, following on the heels of a similar probe launched by Canadian authorities into price fixing at the Canadian units of major chocolate makers Nestlé SA, Cadbury Schweppes Plc, Hershey Co., and Mars Inc. Within a few

months, plaintiffs' attorneys filed dozens of suits across the United States alleging a conspiracy to fix the price of chocolate confectionary products sold in the United States.

On April 7, 2008, in response to motions filed in two actions pending in the District of New Jersey and four actions pending in the Middle District of Pennsylvania, the United States Judicial Panel on Multidistrict Litigation ("JPML" or "Panel") issued a transfer order pursuant to 28 U.S.C. § 1407 to consolidate twenty actions pending in those districts and in the Northern District of California (*Lamson v. The Hershey Co.*, Case No. 3:08-cv-00153), the Eastern District of Pennsylvania, the Eastern District of Michigan, the Southern District of New York, and the Eastern District of Pennsylvania. *See* April 7, 2008 JPML Transfer Order, *In Re Chocolate Confectionary Antitrust Litigation*, MDL No. 1935 (attached as Exhibit A to the Declaration of Leigh A. Kirmssé In Support of Defendant's Opposition to Plaintiff's Motion for Remand ("Kirmssé Decl.")). The Panel selected the Middle District of Pennsylvania as the transferee district for pretrial proceedings in the consolidated litigation. *See id.* In addition to those twenty actions, the parties notified the Panel of 51 related actions pending in various districts across the country. *See id.* The Panel ordered that these actions and any other actions will be treated as potential tag-along actions under the JPML Rules of Procedure. *See id.*

**B.     One Of The Consolidated Cases, *Candido v. Hershey,* Asserts Claims Under California Law On Behalf Of A Putative Class Of California Consumers.**

On January 24, 2007, more than six months before Plaintiff filed his action in California Superior Court, plaintiff John Candido filed a putative class action in this Court alleging a conspiracy among chocolate manufacturers to fix the price of chocolate sold in the United States. *See* Complaint, *Candido v. The Hershey Co.,* Case 3:08-cv-00543-JSW ("*Candido*") (Kirmssé Decl., Ex. B) at ¶ 1. The putative class in *Candido* is defined as "[a]ll person and or entities residing in the State of California . . . who or which directly or indirectly purchased Chocolate in the State of California for their own use and not for resale, at any time during the period beginning February 2002 and continuing through [January 24, 2007]." *Id*. at ¶ 29. *Candido* alleges violations of both federal and California state law, including California's Cartwright Act and Unfair Competition Act. *Id.* at ¶¶ 71-85. The complaint seeks attorneys' fees and treble damages and does not disclose or cap the amount of damages. *Id.* at ¶ 90.

On April 21, 2007, the JPML issued a conditional transfer order transferring *Candido*, another similar action pending in this district (*Blackwell v. The Hershey Co.,* Case No. 08-cv-00674), nine similar actions pending in the Central District of California, and 36 other tag-along cases to join the consolidated proceedings in the Middle District of Pennsylvania pursuant to 28 U.S.C. 1407. *See* April 21, 2008 JPML Conditional Transfer Order (Kirmssé Decl., Ex. C). Shortly thereafter, this Court transferred *Candido* to the Middle District of Pennsylvania. *See* May 15, 2008 N.D. Cal. Transfer Order (Kirmssé Decl., Ex. D). On May 30, 2008, Judge Conner, to whom the MDL proceeding is assigned, issued a case management order establishing the time for defendants to answer or otherwise respond to the consolidated complaint that plaintiffs must file in the MDL by September 29, 2008. *See* May 30, 2008 Case Management Order (Kirmssé Decl., Ex. E); Docket Sheet, MDL No. 1935 (Kirmssé Decl., Ex. F).

**C.  With Knowledge Of The Consolidated Proceedings, Plaintiff Files A Complaint Alleging The Same Claims As *Candido* On Behalf Of The Same Putative Class.**

Plaintiff's lead counsel in this case, Stuart Paynter, also is counsel for plaintiffs in *Cresswell v. The Hershey Co.,* (the "*Cresswell*" action) in the District of Columbia. The *Cresswell* action was removed to federal court and transferred to the Middle District of Pennsylvania for the consolidated MDL proceeding. *See* June 23, 2008 Notice of Removal attaching Cresswell Complaint (Kirmssé Decl., Ex. G); July 24, 2008 Conditional Transfer Order (Kirmssé Decl., Ex. H).

Notwithstanding that the *Candido* complaint makes the same allegations and seeks the same relief, and notwithstanding Mr. Paynter's knowledge of the consolidated proceedings, five months after the *Candido* complaint was filed, Plaintiff filed this action in California Superior Court on June 27, 2008. *See* Complaint. Plaintiff alleges a conspiracy between Nestlé USA, Inc. and several other producers of chocolate confectionaries, including The Hershey Company, Mars, Inc., and Cadbury USA LLC, to "unreasonably restrain and fix price in the market for chocolate confectionary products," but without explanation Plaintiff names Nestlé USA, Inc. as the sole defendant. *Id.* ¶¶ 1, 5-11, 31-67, 73. Plaintiff alleges that the conspiracy began "in 2002 and continu[ed] until at least approximately 2008." *Id.* at ¶ 1. The putative class is defined as "[a]ll California residents who purchased Defendants' chocolate confectionary products in California from 2002 to [June 27, 2008], excluding

1  persons purchasing directly from the Defendant and its co-conspirators." *Id.* at ¶ 12. Plaintiff alleges
2  violation of the California Business & Profession Code § 1670 ("Cartwright Act"), and § 17200
3  ("Unfair Competition Act"), unjust enrichment, civil conspiracy, and seeks an undisclosed and
4  uncapped amount of damages, including attorneys' fees and treble damages. *Id.* at ¶¶ 72-84.

5  On August 18, 2008, the Panel issued a conditional transfer order transferring this case to the
6  Middle District of Pennsylvania to join the consolidated multidistrict proceeding. *See* August 18, 2008
7  Conditional Transfer Order (Kirmssé Decl., Ex. I). The Panel stayed transmission of the order to the
8  transferee court for 15 days, and if Plaintiff files an opposition within the 15-day period, Defendant
9  will respond that the transfer should occur. The stay will then be continued until further order of the
10 Panel. *See id.*

**III.    ARGUMENT**

**A.    Minimal Diversity Jurisdiction Exists Because Plaintiff Is A Citizen Of California And Defendant Is A Citizen Of Delaware.**

By enacting CAFA, Congress established the new "minimal" diversity standard for removal embodied in 28 U.S.C. 1332(d)(A)(2): that "any member of a class of plaintiffs is a citizen of a state different from any defendant." Under 1331(c)(1), a corporation is a citizen of both the state in which it was incorporated and the state in which it has its principal place of business. The question is, when a plaintiff is a citizen of one state, and a defendant corporation is a citizen of both that state and another state, is "minimal" diversity present? The plain language of section 1332(d)(A)(2), Congress's stated intentions regarding that language vis-à-vis section 1331(c)(1), and Congress's stated intentions regarding the general purposes and remedial goals of CAFA, all inexorably lead to the same answer: Yes.

**1.    The Plain Language of Section 1332(d)(A)(2) Establishes That Minimal Diversity Is Present Under These Circumstances.**

"We interpret a federal statute by ascertaining the intent of Congress and by giving effect to its legislative will." *In re Arizona Appetito's Stores, Inc.,* 893 F.2d 216, 219 (9th Cir. 1990). "The starting point in statutory interpretation is the language of the statute itself." *Brower v. Evans*, 257 F.3d 1058, 1065 (9th Cir. 2001). "In construing federal statutes, we presume that the ordinary

HOWREY LLP

-6-
OPPOSITION TO MOTION FOR REMAND
Case No. 08-cv-3636 JSW

1  meaning of the words chosen by Congress accurately express its legislative intent." *Id.* (citing *Mills
2  Music, Inc. v. Snyder*, 469 U.S. 153, 164 (1985). Accordingly, "'when the statute's language is plain,
3  the sole function of the courts – at least where the disposition required by the text is not absurd – is to
4  enforce it according to its terms.'" *In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 812,
5  825 (N.D. Cal. 2005) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1, 6
6  (2000)).

7        The language of section 1332(d)(A)(2) is plain: it requires only that "any member of a class of
8  plaintiff is a citizen of a state different from any defendant." "Thus, under CAFA, complete diversity
9  is not required; 'minimal diversity' suffices." *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th
10 Cir. 2007) (quoting *Bush v. Cheaptickets, Inc.*, 425 F.3d 683, 684 (9th Cir. 2005)). Congress was
11 aware of section 1332(c)(1) when it enacted section 1332(d)(A)(2); if Congress intended to preclude
12 corporate defendants from invoking their dual citizenship to establish minimal diversity under CAFA,
13 it easily could have done so. It did not. Since "the statute's language is plain, the sole function of [this
14 Court] . . . is to enforce it according to its terms.'" *See In re McKesson HBOC*, 391 F. Supp. 2d at 825
15 (quoting *Hartford Underwriters*, 530 U.S. at 6). Under this plain reading of the statute, since Plaintiff
16 is a citizen of California and Defendant is a citizen of Delaware, minimal diversity is present
17 irrespective of Defendant's concurrent citizenship in California.

18       The only court to address this question came to the same conclusion. See *Fuller.,* 2007 U.S.
19 Dist. LEXIS 59770, at *7-8:

20 > As the plaintiff admits, Home Depot is incorporated in Delaware and has its principal
> place of business in Georgia, and is therefore a citizen of both states. The plaintiff's
21 > argument is that there is no diversity because all of the class members and Home Depot
> are citizens of Georgia. However, that does not complete the citizenship analysis. Home
22 > Depot is also a citizen of Delaware because that is its state of incorporation. 28 U.S.C. §
> 1332(c)(1). Consequently, even assuming that the plaintiff and all potential class
23 > members are citizens of only Georgia, the minimal diversity requirement is met here
> because Home Depot is a citizen of a different state – Delaware. In other words,
24 > although Home Depot is a Citizen of Georgia, it is also a citizen of Delaware and,
> therefore, is diverse from at least one member of the class. Thus, minimal diversity has
25 > been established.

27 The court's analysis in *Fuller* is directly on point. Congress meant what it said. *See In re McKesson
28 HBOC*, 391 F. Supp. 2d at 825 ("The United States Supreme Court has explained that statutory

interpretation 'begin[s] with the understanding that Congress says in a statute what it means in a statute and means in a statute what it says there[.]'") (quoting *Hartford Underwriters*, 530 U.S. at 6). Although Plaintiff and Defendant both are citizens of California, Defendant also is a citizen of a different state – Delaware – and therefore minimal diversity is established. *See id.*

### 2. Congress Clearly Stated Its Intent That Minimal Diversity May Be Based On A Defendant Corporation's Dual Citizenship.

The legislative history of CAFA also leaves no doubt that Congress intended that corporate dual citizenship under section 1331(c)(2) is sufficient to establish minimal diversity under section 1332(d)(A)(2). When asked to provide an overview of the jurisdictional provisions of the bill in the Congress and the sponsor's intent with respect to those provisions, Congressman Sensenbrenner, the Chairman of the Committee on the Judiciary, stated:

> I appreciate the gentleman's question. Section 4 of the bill gives Federal courts jurisdiction over class action lawsuits in which the matter in controversy exceeds the sum or value of $5 million, excluding interests and costs and at least one proposed class member and one defendant are citizens of different States or countries. <u>For purposes of the citizenship element of this analysis, S. 5 does not alter current law. Thus, a corporation will continue to be deemed a citizen of any State by which it has been incorporated **and** of the State where it has its principal place of business.</u>

151 Cong Rec H 723, 729 (Congressman Sensenbrenner) (emphasis added). Thus, in addition to the language being plain, the legislative history leaves no doubt that "Congress meant what it said" and that it understood that defendants who are citizens of multiple states would remove be entitled to remove cases based on that dual citizenship. Accordingly, this Court should honor that legislative intent. *See In re McKesson HBOC*, 391 F. Supp. 2d at 825.[1]

---

[1] While it is well established that statutory construction requires inquiry into Congressional intent as evidenced in legislative history, this colloquy with the key House sponsor of the legislation is entitled to particular deference because it reflects the intentions of the bill drafters and because of its proximity to the House vote. *See N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 526-27 (1982) ("Although the statements of one legislator made during debate may not be controlling . . . [the Senator's] remarks, as those of the sponsor of the language ultimately enacted, are an authoritative guide to the statute's construction.").

Notwithstanding this unambiguous expression of legislative intent, Plaintiff may argue Congress could not *really* have intended section 1332(d)(A)(2) to be read in this manner, because in addition to having principal places of business in other states, most corporations are incorporated in Delaware; and consequently, if the statute means what its plain language says, nearly *all* class actions will be removable under CAFA. Plaintiff therefore may argue that the court should depart from the plain meaning of section 1332(d)(A)(2) because "the disposition required by the text is [] absurd." *See In re McKesson HBOC*, 391 F. Supp. 2d at 825 ("'[W]hen the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.'") (quoting *Hartford Underwriters*, 530 U.S. at 6); *Brower*, 257 F.3d at 1067 (Statutory interpretations "which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."). Such an argument should be rejected because there is nothing absurd interpreting section 1332(d)(2)(A) as Defendant advocates. CAFA's critics were acutely aware that the broad language of section 1332(d) would allow nearly all class actions to be removed to federal court:

> <u>By amending the diversity jurisdiction rules, the Class Action Fairness Act of 2005 will give almost exclusive jurisdiction to the Federal courts to hear class action cases.</u> The proponents of the legislation argue that such changes are necessary due to abuses that are occurring in a handful of State courts. Although the bill makes changes to other aspects of class action litigation, such as coupon settlements, <u>this procedural removal of cases from State court to Federal court should be the focus of our scrutiny.</u> This goes to the core of the 10th amendment of the Constitution that preserves the right of a State to protect its citizens. While this shift may be necessary in certain cases, it should not be taken lightly, as we will be taking away the ability of States to hear cases involving injuries to their citizens that are in violation of the State law. <u>This is clearly a fundamental change in jurisprudence</u>….
>
> The proponents of this legislation have argued that the basic goal of the legislation is to move these large class actions to Federal court. For instance, Stanton D. Anderson, executive vice president and chief legal counsel for the U.S. Chamber of Commerce, wrote in the Philadelphia Inquirer, dated February 27, 2004, that: [t]he Class Action Fairness Act <u>would simply allow federal courts to more easily hear large, national class action lawsuits affecting consumers all over the country</u>….
>
> <u>Suffice it to say, the new Federal diversity statute for purposes of class action will accomplish this as very few, **if any**, cases will meet the standards necessary to remain in State court.</u>

1  151 Cong Rec S 1157, 1168 (Sen. Bingaman) (emphasis added). These statements reveal that
2  Congress was aware of the ramifications of the plain language of section 1332(d)(A)(2). Thus, the
3  broad effect of this language is not a reason to decline to give effect to its plain meaning; to the
4  contrary, the opposite it true: that is just what Congress intended.

### 3. Congress Clearly Stated Its Intent That The Jurisdictional Provisions of CAFA Be Interpreted Broadly To Allow Removal To Federal Court.

7  "The meaning of statutory language, plain or not, depends on context." *Brower*, 257 F.3d at
8  1065 (quoting *Holloway v. United States*, 526 U.S. 1, 7 (1999)). "Context in this regard relates to 'the
9  design of the statute as a whole and to its object and policy.'" *Id.* (quoting *Gozlon-Peretz v. United
10 States*, 498 U.S. 395, 407 (1991)). "We look first to the language of the statute itself to determine
11 legislative intent. However, if the statutory language gives rise to several different interpretations, we
12 must adopt the interpretation which 'can most fairly be said to be imbedded in the statute, in the sense
13 of being most harmonious with its scheme and with the general purposes that Congress manifested.'"
14 *In re Arizona Appetito's Stores,* 893 F.2d at 219 (quoting *United States v. 594,464 Pounds of Salmon,*
15 871 F.2d 824, 827 (9th Cir. 1989) (quoting *NLRB v. Lion Oil Co.,* 352 U.S. 282, 297 (1957)); *see also*
16 *Brower*, 257 F.3d at 1065 ("In determining a statutory provision's meaning, we 'may consider the
17 purpose of the statute in its entirety, and whether the proposed interpretation would frustrate or
18 advance that purpose.'") (quoting *United States v. Mohrbacher*, 182 F.3d 1041, 1049 (9th Cir. 1999)).
19    Here, in addition to the specific expression of legislative intent to allow corporations which are
20 citizens of more than one state to remove class actions to federal court, CAFA's text, specifically its
21 legislative findings and stated purposes, demonstrates more generally that Congress intended the
22 statute to be broadly construed to expand federal court jurisdiction over class actions. *See Evans v.*
23 *Walter Indus.*, 449 F.3d 1159, 1163-64 (11th Cir. 2006) ("CAFA's language favors federal jurisdiction
24 over class actions" and the "language and structure of CAFA itself indicates that Congress
25 contemplated broad federal jurisdiction."). In enacting CAFA, Congress sought to remedy "abuses of
26 the class action device" in state courts by developing a new jurisdictional regime that would "restore
27 the intent of the framers of the United States Constitution by providing for Federal Court consideration
28 of cases of national importance under diversity jurisdiction." P.L. 109-2, §§ 2(a)(2), 2(a)(4)(A),

HOWREY LLP

2(b)(2), 119 Stat. 4 (2005). Congress found plaintiffs were "keeping cases of national importance out of Federal court" through manipulative pleading to defeat diversity jurisdiction. *Id.* § 2(a)(4)(A). Congress found that "multiple class action cases purporting to assert the same claims on behalf of the same people often proceed simultaneously in different state courts, causing judicial inefficiencies and promoting collusive activity." S. Rep. 109-14, at *4 (2005), reprinted in 2005 U.S.C.C.A.N. 3. Congress found that defendants were unfairly forced to litigate multiple identical state court class actions because there was no mechanism for consolidating the cases in state court. *Id.* at *23. In an effort to halt this "parade of abuses," S. Rep. 109-14, at *6, Congress broadened federal jurisdiction over class actions by facilitating their removal to federal court. Statements by one of the bill's sponsors reinforce this conclusion (*see supra* n. 1):

> Madam Speaker, first, I have a lengthy additional statement explaining how this bill is to work. We do not have the time in general debate for me to give this statement on the floor, so <u>I will insert the statement relative to the intent of the managers of the bill in the Record at this point</u>. Madam Speaker, I would like to provide a brief summary of the provisions in Sections 4 and 5 of S. 5, the Class Action Fairness Act of 2005. Section 4 gives Federal courts jurisdiction over class action lawsuits in which the aggregate amount in controversy exceeds $5 million, and at least one plaintiff and one defendant are diverse. <u>Overall, new section 1332(d) is intended to expand substantially Federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a Federal court if removed by any defendant.</u>

151 Cong Rec H 723, 727 (Congressman Sensenbrenner).

Interpreting section 1332(d)(A)(2) to permit removal where a defendant is a citizen of both of the plaintiff's state and another state reads the statute "broadly" as Congress intended and advances the statute's purpose of "expand[ing] substantially Federal court jurisdiction over class actions." *See id.* In contrast, interpreting the statute as Plaintiff advocates would frustrate both the object and the policy of CAFA. Despite the truly national nature of alleged price-fixing by corporations located around the country, allegedly raising prices for all consumers generally, attorneys could evade CAFA's purposes by filing multiple copy-cat suits against individual alleged co-conspirators, one in each state in which each alleged co-conspirator is a citizen, while omitting all other alleged co-conspirators as defendants – just as Plaintiff's counsel did here. Such gerrymandering of copy-cat cases to proceed in individual

HOWREY LLP

state courts despite the national nature of the underlying dispute is precisely what Congress enacted CAFA to remedy:

> Perhaps the central problem addressed by the compromise is the forum shopping issue. Article III of the Federal Constitution sets forth the circumstances under which cases may be heard in Federal court. Article 2 of Article III extends Federal jurisdiction to suits "between citizens of different States." These are known as diversity cases. The Framers had two separate but related reasons for allowing Federal courts to hear cases between citizens of different States. Very simply, one was to prevent the possibility that the courts of one State would discriminate against the citizens of another State. The second reason was to prevent the possibility that the courts of one State would discriminate against interstate business and thereby impede interstate commerce. Over the years, however, class action rules have been interpreted in such a way that <u>plaintiffs' lawyers have been able to keep class actions out of Federal court, even those that are precisely the kind of cases for which diversity jurisdiction was created, because of their interstate character. They do this by adding named plaintiffs or defendants solely based on their State of citizenship in order to defeat the diversity requirement.</u>

151 Cong Rec S 1076, 1079 (Senator Dodd) (emphasis added). Just as abusive plaintiffs' attorneys avoided removal pre-CAFA by adding parties to destroy complete diversity, post-CAFA, if Plaintiff's interpretation is adopted, attorneys will be able to accomplish the same end by filing separate suits against individual alleged co-conspirators, omitting all other natural defendants to destroy minimal diversity, despite the genuinely interstate character of the case. This Court should not sanction such gamesmanship, the very gamesmanship Congress sought to address with CAFA.

### 4. As An Expressly Remedial Statute, CAFA Should Be Interpreted Broadly To Serve Its Legislative Purposes To The Maximum Extent Possible.

As set forth above, CAFA is an expressly remedial statute. "Following traditional canons of statutory interpretation, remedial statutes should be construed broadly to extend coverage." *Cobain v. Destination Hotels & Resorts*, No. Civ-S-05-2248, 2007 U.S. Dist. LEXIS 40077, *60 (E.D. Cal. 2007) (quoting *Cobb v. Contract Transport Inc.*, 452 F.3d 543, 558 (6th Cir. 2006); *see also Lambert v. Ackerly*, 180 F.3d 997, 1003 (9th Cir. 1999) (holding that statute which is remedial in purpose "must not be interpreted or applied in a narrow, grudging manner") (citations omitted). Accordingly, this is yet another reason to follow the Northern District of Georgia in interpreting section 1332(d)(A)(2) broadly to maximize federal jurisdiction for class actions of national importance by making removal

HOWREY LLP

easier as Congress intended, and therefore to hold that that when a plaintiff is a citizen of one state and a defendant corporation is a citizen of both that state and another state, minimal diversity is satisfied.

### 5.  The Non-CAFA Cases Cited By Plaintiff Are Inapposite.

Plaintiff asserts that Congress enacted section 1332(c)(1) in 1958 to "eliminate 'the evil whereby a local institution, engaged in a local business and in many cases locally owned, is enabled to bring its litigation into the Federal courts simply because it has obtained a corporate charter from another State.'" Mot. at 7:15-8:8 (quoting *Sellers v. Kohlberg*, 2001 U.S. Dist. LEXIS 9498 (N.D. Cal. 2001) (quoting S. Rep. No. 85-1830, at 5 (1958)). Plaintiff cites *Tosco Corp. v. Communities for a Better Environment*, 236 F.3d 495, 497 (9th Cir. 2001), in which the Ninth Circuit ordered remand after finding that a plaintiff with its principal place of business in California and a California non-profit corporation were "not diverse parties."  While Defendant does not dispute these authorities, the conclusion Plaintiff draws from them – that section 1332(c)(1) cannot be used to provide a basis for removal under section 1332(d), as amended by CAFA – is incorrect.  Plaintiff's argument is misplaced. The relevant statutory language for traditional "complete diversity" jurisdiction continues to exist and is different language from that used in CAFA.  His cited authorities concern traditional "complete" diversity jurisdiction, and do not account for the new jurisdictional regime imposed by CAFA, the express purpose of which is to expand federal jurisdiction over class actions by making it easier for defendants to remove such cases to federal court through the new lenient standard of "minimal" diversity.  *See generally supra.*  Thus, Plaintiff's contention that "this case is indistinguishable from *Tosco*" is not just without merit, it is absurd; this case is entirely distinguishable from *Tosco* because *Tosco* involves traditional complete diversity jurisdiction, pre-dates CAFA, and sheds no light on CAFA's new minimal diversity standard.  The other cases Plaintiff cites (*see* Mot. at 8:4-8) are inapposite for the same reason.

Indeed, this fundamental flaw in Plaintiff's argument affirms Defendant's reasoning, the same reasoning adopted by the only district court to address this issue.  *See Fuller.,* 2007 U.S. Dist. LEXIS 59770, at *7-8.  As Plaintiff states, under section 1332(c)(1), in a non-CAFA case, complete diversity is *exclusive*, not inclusive, prohibiting defendants from removing a case to federal court based on dual citizenship.  In contrast, as set forth above, CAFA amended section 1332(d) to make it easier for

1  defendants to remove class actions of national importance to federal court, and to prevent plaintiffs
2  from gerrymandering such cases to foil removal by manipulative pleading intended to defeat diversity
3  jurisdiction.  Thus, as the text, legislative findings, and stated purposes of CAFA makes clear,
4  Congress intended the new section 1332(d)(2)(A) to be *inclusive*, not exclusive.  Accordingly, while
5  dual citizenship under section 1332(c)(1) does not provide grounds for removal in a non-CAFA
6  complete diversity case because in addition to being a resident of another state, the defendant also is a
7  resident of the forum state, dual citizenship should be interpreted to provide grounds for removal in a
8  CAFA minimal diversity case because in addition to being a citizen of the forum state, *the defendant
9  also is a citizen of another state*.  *See id.; cf. Nike, Inc. v. Comercial Iberica De Exclusivas Deportivas,
10 S.A.,* 20 F.3d 987, 990-991 ("NIL, however, is a corporation and we cannot disregard either its site of
11 incorporation, Bermuda, or its principal place of business, which Nike alleges is Oregon, when testing
12 for complete diversity.  In this instance, when we treat NIL as an alien citizen due to its Bermuda
13 incorporation, the requirements of diversity jurisdiction are not met.")

## IV.    CONCLUSION

Defendant Nestlé USA respectfully requests that this Court deny Plaintiff's motion for remand or, alternatively, allow the MDL court to decide the issue in the context of Plaintiff's opposition to the JPML's conditional transfer order; and afford such other and further relief as may be just and proper.

Dated:  September 2, 2008        By:    By:    /s/ Leigh A. Kirmssé
                                        Leigh A. Kirmssé (SBN 161929)
                                        HOWREY LLP
                                        525 Market St., Suite 3600
                                        San Francisco, CA 94105-2708
                                        Telephone :  (415) 848-4993
                                        Facsimile :  (415) 848-4999
                                        Email:  kirmssel@howrey.com

                                        Roxann E. Henry (DC Bar No. 231282; *pro hac vice to be submitted*)
                                        Peter E. Moll (DC Bar No. 351569; *pro hac vice to be submitted*)
                                        HOWREY LLP
                                        1299 Pennsylvania Avenue, N.W.
                                        Washington, DC  20004
                                        Tel.:  (202) 383-6503

Fax: (202) 383-6610
Email: mollp@howrey.com

*Attorneys for Nestlé U.S.A., Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 2nd day of September, 2008, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission, and/or first class mail on this same date.

/s/ Leigh A. Kirmssé
Leigh A. Kirmssé

21441667

**HOWREY LLP**